1  SANDI M. COLABIANCHI (SBN 193872)
   scolabianchi@gordonrees.com
2  GORDON & REES LLP
   275 Battery Street, Suite 2000
3  San Francisco, CA 94111
   Telephone:  (415) 986-5900
4  Facsimile:  (415) 986-8054

5  Attorneys for Doris A. Kaelin,
   Trustee in Bankruptcy

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IN RE STERLING PEAK, LLC<br><br>Debtor. | CASE NO. 16-53243 MEH<br>Chapter 7<br><br>**MOTION BY TRUSTEE FOR AUTHORITY TO COMPROMISE CONTROVERSY WITH NPI DEBT FUND I, LP; ARCH LOANS SPE, LLC; NPI DEBT FUND II, LP; AND ARCH CBT SPE, LLC**<br><br>Hearing Date:  July 20, 2017<br>Hearing Time:  4:00 p.m.<br>Judge:  Hon. M. Elaine Hammond |

Doris A. Kaelin, Chapter 7 Trustee of the above named debtor, moves to compromise the disputes with NPI Debt Fund I, LP; Arch Loans SPE, LLC; NPI Debt Fund II, LP; and Arch CBT SPE, LLC relating to their liens against the estate's real properties as described further below.

**1. BACKGROUND.**

Sterling Peak, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 15, 2016. The Bankruptcy Case was converted to Chapter 7 of the Bankruptcy Code on February 10, 2017 and Doris Kaelin was appointed Chapter 7 Trustee of the Sterling Peak, LLC bankruptcy estate ("Estate").

At the time of the filing of the bankruptcy cases, the following real property was owned by the Debtor: a) 2509 Lansford Avenue, San Jose, California ("Lansford"); b) 1707 Ringwood

Avenue, San Jose, California ("Ringwood"); c) 1123 Versailles Venue, Alameda, California ("Versailles"); d) 835 Dry Creek Road, Parcel A, San Jose, California ("Dry Creek"); e) 390 Floyd Street, San Jose, California ("Floyd"); and f) 13 Locke Way, Scotts Valley, California ("Locke") (collectively, the "Real Properties").

The Real Properties are subject to senior deeds of trust asserted by Senior Lender in the following principal amounts on loans made on the following dates:

| Property | Loan Date | Principal Amount of Loan |
|---|---|---|
| Lansford | December 4, 2015 | $1,022,000 |
| Ringwood | April 7, 2016 | $595,000 |
| Versailles | March 4, 2016 | $420,000 |
| Dry Creek | September 11, 2015 | $880,250 |
| Floyd | March 16, 2016 | $976,500 |
| Locke | March 16, 2016 | $576,631 |

The interest rate under the terms of the notes on each of the loans made by Senior Lender and secured by the Real Properties is 12%, and each note also provides for an Origination Fee of $1,300, with the exception of Lansford which is $1,335, and Points of 2% of the loan amount. In addition, if there is a default under the terms of the notes, the notes each provide for a 12% additional default rate of interest, late fees and attorney fees and costs to be payable to the Senior Lender. Trustee has disputed the validity of the default interest as an unenforceable penalty. Senior Lender has asserted that the default interest is an enforceable obligation and not an unenforceable penalty.

Senior Lender has filed proofs of claim asserting secured claims against the estate ("Senior Proofs of Claim"). Senior Lender has also filed motions for relief from the automatic stay to enforce its liens against each of the Real Properties ("Senior Relief from Stay Motions").

Junior Lender asserts liens against the Real Properties in the following principal amounts:

| Property | Deed of Trust Date Recorded | Principal Amount Reflected in Deed of Trust |
|---|---|---|
| Lansford | August 17, 2016 | $730,000.00 |
| Ringwood | August 4, 2016 | $1,266,711.40 |
| Versailles | August 5, 2016 | $300,000.00 |
| Dry Creek | August 4, 2016 | $619,750.00 |
| Floyd | August 4, 2016 | $577,500.00 |
| Locke | August 5, 2016 | $411,879.80 |

Trustee has disputed the validity of the Junior Lender's liens on the grounds that they are

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

each a fraudulent transfer, or in the alternative, invalid since there is no note that exists between the Debtor and Junior Lender as described in the deed of trust. In addition, as to the Lansford property, the Trustee has asserted that the lien is a preference that is avoidable under section 547 of the Bankruptcy Code. Trustee filed an action against Junior Lender to avoid its liens against the Real Properties, pending in the Bankruptcy Court as adversary proceeding no. 17-5041 ("Adversary Case"). Junior Lender has filed an answer in the Adversary Case and disputes the Trustee's allegations. Junior Lender has filed a proof of claim asserting a secured claim in the principal amount of $4,997,841.20 against the estate reflected in the Court's claims register as Claim No. 17 ("Junior Proof of Claim"). Junior Lender asserts that it is entitled to include prepetition interest (both a contract rate of 22% and a default rate of 10%), fees and costs in its claim. Trustee disputes that Junior Lender is entitled to seek payment of its claim from Debtor and further disputes the validity of the interest rates.

Trustee has entered into agreements to sell the Real Properties, with the exception of the Dry Creek property, subject to overbid and Bankruptcy Court approval, in the following amounts:

| Property | Purchase Price |
|---|---|
| Lansford | $1,875,000[1] |
| Ringwood | $1,300,000 |
| Versailles | $770,000 |
| Floyd | $1,450,000[2] |
| Locke | $910,000 |

Motions for approval of the sale of the Real Properties are being set for hearing at the same time as this motion.

**2. AGREEMENT**

The Parties have reached an agreement to resolve the disputes between them in this case.

---

[1] Purchase price is subject to a $30,000 credit to the benefit of the buyers. Sale is to the buyers at the approximate amount of the purchase price in a pre-petition contract entered into by the Debtor, with a cap on the credits to the buyers, in consideration of the buyer's rights under section 365(i) of the Bankruptcy Code since the buyers occupied the property on the petition date and continue to occupy the property.

[2] Purchase price of Floyd is $1,450,000 but Buyer is not using an agent which saves $36,250. Buyer to receive credit of $10,000 to assume responsibility for removal of personal property from premises. Value to estate is $1,476,250 before liens, costs of sale, etc.

A summary of the terms of the agreement follows.  A copy of the agreement is attached to the Declaration of Doris Kaelin, Trustee, filed in support of this Motion.

Senior Lender and Junior Lender will not oppose the Trustee's motions to sell the Lansford, Locke, Versailles, or Dry Creek properties.  Senior Lender will accept the following as payment in full of their claims with respect to the Lansford, Locke, Versailles, and Dry Creek properties: a) payment of the principal amount of each note; b) the contract rate of interest of 12%; and c) a default rate of interest of 5%.  The amount due for each of the Real Properties under this paragraph as of August 4, 2017 is as follows:

| Property | Agreed Amount due as of 8/4/17 | Per Diem (Agreed Interest and Default Interest) |
|---|---:|---:|
| Lansford | $1,267,280.00 | $476.00 |
| Ringwood | $719,542.47 | $277.12 |
| Versailles | $513,838.36 | $195.62 |
| Dry Creek | $1,076,919.55 | $409.98 |
| Floyd | $1,194,674.18 | $454.81 |
| Locke | $705,464.58 | $268.57 |

Senior Lender agrees to waive all additional interest, fees and costs that they could assert under their respective notes with respect to these properties.

Junior Lender will receive 50% of the net proceeds received by the Trustee from the sale of the Locke, Versailles, and Dry Creek properties.  Junior Lender will receive 30% of the net proceeds received by the Trustee from the sale of the Lansford property.  "Net proceeds" means the amount of proceeds remaining after payment of the senior liens, property taxes and costs of sale. Senior liens include the Senior Lender liens against each of the Real Properties, the lien held by Michael West in the principal amount of $175,000 against the Lansford property and the lien held by Hua Cheng in the principal amount of $75,000 against the Versailles property.

Junior Lender will make an overbid offer to purchase the Floyd property free and clear of all liens, claims, and encumbrances, with the exception of the Senior Lender lien, in the amount of $1,455,000.  This offer to purchase consists of the following: (a) an assumption of the Senior Lender lien, which totals $1,194,674.18 as of August 4, 2017; (b) payment of estimated costs in the amount of $77,325.82, which includes a broker commission to the Trustee's broker of 2.5% of the purchase price, property taxes, transfer, other fees and assessments by the City or County,

Case: 16-53243    Doc# 138    Filed: 06/23/17    Entered: 06/23/17 16:26:16    Page 4 of 10

Page 4

and any other costs of sale (the "Floyd Estimated Costs"); (c) cash in an amount necessary for Trustee to receive the total sum of $89,000 from escrow after payment of the actual costs of sale (the "Floyd Trustee Proceeds"); and (d) a credit bid in the estimated amount of $94,000.00 (the "Floyd Credit Bid"). To the extent the actual costs of sale exceed the Floyd Estimated Costs, Junior Lender will pay 50% of such excess costs, and Trustee will pay 50% of such excess costs. To the extent actual costs of sale are less than the Floyd Estimated Costs, Junior Lender shall receive back from escrow cash in the amount of 50% of the total by which the Floyd Estimated Costs exceeded the amount of the actual costs, and the Trustee shall receive the other 50% of such total. The amount of the Floyd Credit Bid is subject to change based on the amount of the actual costs of sale, and shall be calculated by subtracting the Senior Lien amount, the total costs actually paid, and the Floyd Trustee Proceeds from the purchase price.

Junior Lender will make an overbid offer to purchase the Ringwood property free and clear of all liens, claims, and encumbrances, with the exception of the Senior Lender lien, in the amount of $1,305,000. This offer to purchases consists of the following: (a) an assumption of the Senior Lender lien, which totals $719,542.47 as of August 4, 2017; (b) payment of estimated costs in the amount of $88,299.53, which includes a broker commission to the Trustee's broker of 2.5% of the purchase price, property taxes, transfer taxes, other fees and assessments by the City or County, and any other costs of sale (the "Ringwood Estimated Costs"); (c) cash in an amount necessary for Trustee to receive the total sum of $246,079.00 from escrow after payment of the actual costs of sale (the "Ringwood Trustee Proceeds"); and (d) a credit bid in the estimated amount of $251,079.00 (the "Ringwood Credit Bid"). To the extent the actual costs of sale exceed the Ringwood Estimated Costs, Junior Lender will pay 50% of such excess costs, and Trustee will pay 50% of such excess costs. To the extent actual costs of sale are less than the Ringwood Estimated Costs, Junior Lender shall receive back from escrow cash in the amount of 50% of the total by which the Ringwood Estimated Costs exceeded the amount of the actual costs, and the Trustee shall receive the other 50% of such total. The amount of the Ringwood Credit Bid is subject to change based on the amount of the actual costs of sale, and shall be calculated by subtracting the Senior Lien amount, the total costs actually paid, and the Ringwood

Trustee Proceeds from the purchase price.

Junior Lender's liens against the Floyd and Ringwood properties shall be considered allowed for purposes of credit bidding up to the amount of its lien.

**THE SALE OF THE FLOYD AND RINGWOOD PROPERTIES ARE ON AN "AS IS" "WHERE IS" AND "WITH ALL FAULTS" BASIS. THE TRUSTEE EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES.** Junior Lender is responsible for removing all personal property on the Floyd and Ringwood properties, and Junior Lender is not asserting and may not assert any buyer realtor commission for either property.

Junior Lender shall be entitled to include in its general unsecured claim the principal amount it loaned (*i.e.*, $4,997,841), plus interest totaling 17% from the date the loans were made to the date Debtor filed its bankruptcy petition. However, Junior Lender's general unsecured claim shall be reduced by the amount of all proceeds received by Junior Lender from the sale of the Locke, Versailles, Dry Creek and Lansford properties, and the amount of the Floyd Credit Bid and the Ringwood Credit Bid. The Adversary Case is to be dismissed with prejudice after approval of the compromise and completion of the Floyd and Ringwood sales.

Trustee may, in her sole discretion, abandon the Dry Creek property. In such event, the Trustee will request that the order authorizing the abandonment of the Dry Creek property contain a provision granting Senior Lender relief from the automatic stay to allow Senior Lender to proceed under applicable nonbankruptcy law to enforce its remedies to foreclose on and obtain possession of the Dry Creek property.

**3.     ANALYSIS**

The Trustee believes that the proposed compromise is fair and reasonable and is in the best interest of this bankruptcy estate. The Trustee further believes that the settlement meets the below standards established by the Ninth Circuit Court of Appeals to determine the fairness, reasonableness, and adequacy of a settlement: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. *In re*

*A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *quoting In re Flight Transportation Corp. Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir. 1984).

1. <u>Resolution of Default Interest Dispute with Senior Lender</u>

The notes for the Senior Lender's liens against each of the Real Properties provided for default interest in the amount of 12%. The default interest would be in addition to the 12% note rate interest. Trustee has disputed the default interest rate on the grounds that it appeared to be an unreasonable penalty since similar rates have been disallowed by other courts and it was higher than default rates seen by the Trustee in other matters. Senior Lender has asserted that the rate is consistent with the rates charged by lenders for these types of loans and similar rates have been allowed by the courts.

In reviewing the first and third *A&C Properties* factors, while the Trustee believes that the default rate is very high, in determining if a default rate is a penalty, a court may consider whether the rate is reasonably calculated to compensate the creditor for damages caused by the default. *See In re DWS Investments, Inc.*, 121 B.R.. 845, 849 (Bankr. C.D. Cal. 1990). Since the loans are higher risk loans due to the construction work that the Debtor intended to perform, even though the loans are senior loans that are fully secured, the risk of default was significant and the structure of the loan and debtor could make it costly to enforce the loan. Given these circumstances, there would be a risk in litigation. The costs of litigating the issue would also be significant since the determination may require testimony from the Senior Lender, comparison of costs from other lenders, and possibly expert testimony as well. While a default rate of 5% may be high depending on the type of loan, given the circumstances of the loans made by the Senior Lender to the Debtor, and that the costs related to the default, including attorney fees and late charges, are included in the 5% default rate that is part of the compromise, the Trustee believes that the compromise is reasonable and in the interest of the estate.

The second *A&C Properties* factor, collection of any judgment, is not as relevant in this case since if the Trustee were authorized to sell the real property then the Trustee would also seek to hold the funds in dispute pending resolution of the dispute. The fourth *A&C Properties* factor, paramount interest of creditors, is also satisfied by the compromise since the compromise

allows the Trustee to resolve the issue concerning default interest with the Senior Lender along with the remaining disputes with the Senior Lender and Junior Lender, to allow a significant amount of funds to be available to the estate without further litigation risk and costs.

### 2. Resolution of Disputed Junior Liens

Junior Lender asserts liens against each of the Real Properties and if allowed, the liens would exceed the value of the property after accounting for senior liens and costs of sale. The Trustee filed the Adversary Case seeking to avoid the liens against the Real Properties as a fraudulent transfer, or alternatively as invalid since there was no note that was entered into between the Debtor and Junior Lender although the deeds of trust indicate that they secure such a note. As to the Lansford property, the Junior Lender's deed of trust was recorded 90 days before the filing of the Debtor's petition. Trustee asserted that the recording of the Lansford deed of trust was a preference. The compromise effectively splits the proceeds from the sale of each of the Real Properties, after accounting for senior liens and costs of sale, evenly between the Trustee and the Junior Lender, with the exception of the Lansford property, from which the Trustee will receive 70% of net proceeds and Junior Lender will receive 30% of net proceeds.

As to the first and third *A&C Properties* factors, the proposed compromise allows for the Trustee and the bankruptcy estate to receive approximately half of the proceeds from the sale of the Real Properties and 70% of the net proceeds from the sale of the Lansford property without incurring the costs of litigation and without the risk in litigation. The costs would be significant because the dispute involves multiple properties, multiple liens, factual disputes concerning both the original loan and later loan and joint venture proposals, as well as issues concerning the principal's conduct and a related entity of the principal, Summit Assets Group, that was the borrower under the note and allegedly involved in the management of the Debtor. The deeds of trust reference a note that does not exist, but the Junior Lender appeared to have made loans of which at least a substantial portion of the amounts loaned benefitted the Debtor or the Real Properties. While the Debtor asserts that the liens were granted for additional funds, which were not received, there is a question of whether the liens were for the prior loans. Given that the loan proceeds appeared to have been used for the Debtor's expenses or the Real Properties, an issue in

litigation is whether reasonably equivalent value was received by the Debtor, a factor in determining if the liens were a fraudulent transfer. The Lansford lien has an additional risk to the Junior Lender since the deed of trust was recorded within the preference period. However, the lien was recorded within 30 days of execution, although more than 30 days after the effective date set forth in the deed of trust. If the lien were determined to take effect on the execution date, the transfer may be determined to have taken place on the execution date which may bring the transfer outside of the preference period. If Junior Lender were successful in litigating these issues, the estate would receive no funds from any of the Real Properties since the liens against each of the Real Properties, together with the Junior Lender liens, exceed the value of each of the Real Properties. After accounting for the risks in litigation of these issues, including the factual disputes, the potential to have no funds in the estate if the litigation is not successful, and the costs of litigation, the Trustee believes that the proposed compromise with the Junior Lender and the Senior Lender is in the best interest of the estate. The risk as to the Lansford property is less, although still present due to the issue of when the deed of trust takes effect, and the proposed compromise takes this into account and provides the estate 70% of the proceeds from the sale.

Similar to the Senior Lender dispute, the second *A&C Properties* factor, collection of any judgment, is not as relevant in this case since if the Trustee were authorized to sell the real property then the Trustee would also seek to hold the funds in dispute pending resolution of the dispute. The fourth *A&C Properties* factor, paramount interest of creditors, is also satisfied by the compromise since the compromise allows the Trustee to resolve the numerous issues with the Junior Lender and allows a significant amount of funds to be available to the estate without further risk and costs in connection with litigation. Trustee has also entered into agreements to sell all of the Real Properties, except for the Dry Creek property and that property is still on the market. The compromise will also allow these sales to proceed without further litigation related to the Senior Lender and Junior Lender liens, including additional costs and risks.

///
///
///

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## 4. CONCLUSION

For the reasons stated above, the Trustee requests that the Court (a) authorize the compromise with the Senior Lender and Junior Lender on the terms stated in this Motion and the Agreement; and (b) authorize the Trustee to execute the Agreement and take all actions and execute all documents necessary to carry out the terms of the Agreement.

Dated: June 23, 2017    GORDON & REES LLP

By  /s/  Sandi M. Colabianchi
Sandi M. Colabianchi
Attorneys for Doris A. Kaelin
Trustee in Bankruptcy

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1133370/33439663v.1